# UNITED STATES DISTRICT COURT

for the

District of Oregon

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

The cellular telephone assigned call number (703) 609-1849, as described in Attachment A

)
)
)
)
)
)

Case No.  3:24-mc-00641

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

The cellular telephone assigned call number (703) 609-1849, as described in Attachment A hereto,

located in the _____ District of _____ New Jersey _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2422, and  1470 (a)(1) | Attempted Coercion and Enticement of a Minor, Attempted Transfer of Obscene Material to Minors |

The application is based on these facts:

See affidavit in support of search warrant.  To ensure compliance with 18 U.S.C. §§ 3121-3127, the warrant will also function as a pen register order and an accompanying Declaration certified by a government attorney is included.  See 18 U.S.C. §§ 3122(b), 3123(b).

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
FBI Special Agent Aaron T. Eisner
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____Telephone at 2:42pm_____ *(specify reliable electronic means).*

Date:  ___June 14, 2024___

_Stacie F. Beckerman_
*Judge's signature*

City and state:  _Portland, Oregon_

Hon. Stacie F. Beckerman, United States Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**Property to Be Searched**

1.     The cellular telephone assigned call number **(703) 609-1849** and used by **Carl Eric Easton** ("**Target Cell Phone**") that is stored at the premises controlled by T-Mobile US, Inc. ("the Provider"), a company headquartered at 4 Sylvan Way, Parsippany, New Jersey;

2.     Information about the location of **Target Cell Phone** that is within the possession, custody, or control of T-Mobile US, Inc. ("the Provider"), a company headquartered at 4 Sylvan Way, Parsippany, New Jersey**.**

**ATTACHMENT B**

**Particular Things to Be Seized**

I.      **Information to Be Disclosed by T-Mobile US, Inc. (hereinafter "Provider")**

A.      **Prospective Geolocation Information**:

1.      All information about the location of the Target Cell Phone described in Attachment A for a period of forty-five (45) days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information [distance from tower, range to tower (PCMD/RTT/REVEAL/Historic MLTs, TrueCall, TDOA, Timing Advance Information or NELOS or other similar un-named records held by the Provider)], as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

2.      To the extent that the information described in the previous paragraph (hereinafter "Location Information") is within the possession, custody, or control of Provider, Provider is required to disclose the Location Information to the government.  In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate Provider for reasonable expenses incurred in furnishing such facilities or assistance.

Attachment B                                                                                          Page 1

**B.**    <u>**Subscriber Information, Historical Cell Site and Prospective Cell Site Information**</u>:

1.    To the extent that information associated with the Target Cell Phone described in Attachment A (hereinafter "Account") is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of May 1, 2024 to the date of execution of the warrant:

a.    <u>**Subscriber Information**</u>:  The following information about the customers or subscribers of the Account:

    i.    Names (including subscriber names, user names, and screen names);

    ii.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii.    Local and long distance telephone connection records;

    iv.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v.    Length of service (including start date) and types of service utilized;

    vi.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

    viii.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

b.   **Historical Cell Site Information**:  All records and other information (not including the contents of communications) relating to the Account, including:

i.   Records of user activity for each connection made to or from the Account, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

ii.   Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers);

iii.   All data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from each cellular telephone or device assigned to the Account; and

iv.   All historical geo-location services/global positioning system (GPS) data/enhanced 911 (E911) records including any available ranging data [distance from tower, range to tower (PCMD/RTT/REVEAL/Historic MLTs, TrueCall, TDOA, Timing Advance Information or NELOS or other similar un-named records held by the Provider)] which may be available to the Provider.

c.   **Prospective Cell Site Information**:  Information associated with each communication to and from the Account for a period of forty-five (45) days from the date of this warrant, including:

i.   Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii.   Source and destination telephone numbers;

iii.   Date, time, and duration of communication; and

iv.   All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication.

C.      **Pen Register and Trap and Trace Device Data:**

1.      Pursuant to 18 U.S.C. § 3123, Provider shall install and use pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cell phone number described in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit:

      a.      IP addresses associated with the cell phone device or devices used to send or receive electronic communications.

      b.      Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN.

      c.      IP addresses of any websites or other servers to which the cell phone device or devices connected.

      d.      Source and destination telephone numbers and email addresses.

2.      Pursuant to 18 U.S.C. § 3123(c)(1), that the use and installation of the foregoing is authorized for forty-five (45) days from the date of this Order.

3.      Pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), Provider and any other person or entity providing wire or electronic communication service in the United States whose assistance may, pursuant to 18 U.S.C. § 3123(a), facilitate the execution of this Order shall, upon service of this Order, furnish information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service.

**Attachment B**                                                                                        **Page 4**

4.     Any entity providing such assistance shall be reasonably compensated by the Investigative Agency, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of this Order.

5.     The Provider and any other person or entity whose assistance may facilitate execution of this Order notify the investigative agency of any changes relating to the cell phone number described in Attachment A, including changes to subscriber information, and provide prior notice before terminating or changing service to the cell phone number.

6.     Access to the information collected by the pen-trap devices shall be provided as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the investigative agency, for the duration of this Order.

7.     This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2422(b) (Attempted Coercion and Enticement of a Minor) and 18 U.S.C. § 1470 (Attempted Transfer of Obscene Material to Minors) involving Carl Eric Easton.

NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**ELIZA CARMEN RODRIGUEZ, SDTX #3608022**
Assistant United States Attorney
Eliza.Carmen.Rodriguez@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE INSTALLATION AND USE OF PEN REGISTERS AND TRAP AND TRACE DEVICES** | Misc. No. ___3:24-mc-00641_____ <br><br> **18 U.S.C. § 3122 DECLARATION** <br><br> **UNDER SEAL** |

I, Eliza Carmen Rodriguez, declare as follows:

1.       I am a duly appointed Assistant United States Attorney for the District of Oregon, and I have primary responsibility for representing the interests of the United States herein.

2.       I make this declaration in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) with an integrated pen-trap order pursuant to 18 U.S.C. §§ 3122 and 3123.  Pursuant to 18 U.S.C. § 3122(a)(1), I am the applicant for purposes of the pen-trap portion of the requested warrant and order.

3.       Pursuant to 18 U.S.C. § 3122(b), I certify that the Federal Bureau of Investigations (FBI) is the law enforcement agency conducting the investigation in this

**18 U.S.C. § 3122 Declaration              Page 1**

matter and that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by that agency.

4.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Application is made on the basis of information officially furnished, and on that basis.  I verily believe such information to be true.

Executed: June 14, 2024

*/s/ Eliza Carmen Rodriguez*
ELIZA CARMEN RODRIGUEZ
Assistant United States Attorney

DISTRICT OF OREGON, ss:          AFFIDAVIT OF AARON T. EISNER

**Affidavit in Support of an Application
for a Search Warrant for Geolocation Data**

I, Aaron T. Eisner, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.        I am a Special Agent with the FBI and have been since 2011. I am currently
assigned to the FBI's Portland Field Office. My current assignment involves investigating child
exploitation crimes. My training and experience include investigating federal criminal violations
related to child exploitation, among other violations of federal law. I have acquired knowledge
and experience in conducting criminal investigations from formal and informal training, learning
from other law enforcement officers, and my participation in investigations. As a federal law
enforcement officer, I am authorized to investigate and make arrests for violations of federal law
and to apply for federal search warrants.

2.        I submit this affidavit in support of an application for a search warrant under Rule
41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(c)(1)(A) for information
about the cellular telephone assigned call number **703-609-1849 with International Mobile
Subscriber Identifier ("IMSI") 310260436086513, subscribed to and used by Carl Eric
EASTON** (hereinafter "**Target Cell Phone**"), whose service provider is T-Mobile US, Inc.
(hereinafter "Provider"), a company headquartered at 4 Sylvan Way, Parsippany, New Jersey, as
described in Attachment A. As explained below, I believe there is probable cause to obtain the
location information and other information as described in Attachment B.

3.        Because this warrant seeks the prospective collection of information, including
cell-site location information, that may fall within the statutory definitions of information

**Affidavit of Aaron T. Eisner                                                                          Page 1**

collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C § 2422(b) (Attempted Coercion and Enticement of a Minor) and 18 U.S. Code § 1470 (Attempted Transfer of Obscene Material to Minors) (hereinafter "Target Offenses") have been committed, are being committed, or will be committed by Carl Eric Easton (hereinafter "Easton"). There is also probable cause to believe that the location information and other information described in Attachment B will constitute evidence of these criminal violations.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**Affidavit of Aaron T. Eisner**                                                    **Page 2**

**Target Offenses**

7.    Title 18 U.S.C. § 2422(b) makes it a crime for any person, using the mail or any facility or means of interstate or foreign commerce, to knowingly persuade, induce, entice, or coerce any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense, or to attempt to do so.

8.    Title 18 U.S.C. § 1470 makes it a crime for any person, using the mail or any facility or means of interstate or foreign commerce, to knowingly transfer obscene matter to another individual who has not attained the age of 16 years, knowing that such other individual has not attained 16 years, or to attempt to do so.

**Statement of Probable Cause**

**Conversations begin between OCE posing as a 12-year-old female and Easton**

9.    On or about May 17, 2024, a male, later identified as Carl Eric Easton (hereinafter "Easton"), initiated a direct message conversation with a Federal Bureau of Investigation ("FBI") online covert employee ("OCE") posing as a 12-year-old female on a Mobile Application (hereinafter "Mobile Application A").[1] Mobile Application A refers to an online mobile application that permits users to make posts as well as send and receive direct messages, to include images, with other users.[2]

10.    The direct message received from Easton was in response to a Mobile Application

---

[1] The name of the mobile application is known to law enforcement and being anonymized to protect the on-going investigation.

[2] The affiant has observed that Mobile Application A may not memorialize messages in the sequential order they were sent during a direct message conversation. On occasion, a Mobile Application A direct message may be sent and subsequently memorialized in the conversation several lines prior to when it was actually sent.

**Affidavit of Aaron T. Eisner**                                    **Page 3**

post made by the OCE on or about May 17, 2024. OCE's post included a digitally modified image of what appeared to be an approximately 12-year-old female holding a flower with the caption "Look what I found!!." OCE used the name "Ashley" for the 12-year-old female persona. Easton used the profile name "Charlie Magnolia" on Mobile Application A.

11.    A direct message conversation between OCE and Easton ensued on or about May 17, 2024, and has continued to the present. During that conversation, the OCE's female persona communicated her age to Easton shortly after the conversation began. The following summaries of excerpts from the direct messages demonstrate that Easton is aware that the OCE's female persona is a 12-year-old minor:

> **Easton: Wish you were my crossing guard**
> **OCE: Hehe im to young to be a crossing guard im just 12**
>
> **OCE: U don't mind that im just 12?**
> **Easton: I'am.  I don't at all**

**Easton displays a sexual interest in the 12-year-old OCE persona**

12.    Based on then direct message conversation, Easton has demonstrated he has a sexual interest in OCE's 12-year-old female persona as demonstrated in the summaries of excerpts below:

> **Easton: Yeees when I clean you belly button kiddo with my tongue it won't tickle but will feel ticklish but not be it's amazing and will make goose bumps appear on some random places elsewhere**
> **Easton: I love when your happy and excited fr fr the best**
> **Easton: Then well then the polish continues cupcake**
> **OCE: I like that makes me happy what else**
> **Easton: Then I have to put my paws on your thighs and spread them out and lick all the way down your treasure trail stop right before your puss**
> **Easton: And for a minute just admire that mutha fucker while some slavia falls off my lip kiddo :):) and I'd lick super slowly all around your kitty without touching just the tip of my tongue tongue all the way around**
> **OCE: Pretend ehats a lollipop?**

**Easton: You're amazing. Would you do the dare and pretend it was a lollipop [image of lollipop emoji] for a few minutes**
**Easton: Aww baby xo xo**
**Easton: [image of adult male genitals]**

**Easton: …But want to visit and rent a cool convertible car to drive around in there xo**

**Easton: Cool ass Ashley I def wanna hang on the low :) had a dream about you the other night ! We were at this carnival [carnival emoji] was a real good one , cray**
**Easton: [Easton sent the below image]**



**Phone Conversations between Easton and "Ashley"**

13.      Additionally, on or about May 30, 2024, and June 10, 2024, Easton, and a police officer purporting to be OCE's 12-year-old female persona engaged in two phone conversations. The first phone conversation lasted approximately 20 minutes and the second phone call lasted approximately nine minutes. During both phone calls, Easton appeared to believe he was speaking to "Ashley," the OCE's 12-year-old female persona.

14.      During the May 30, 2024, phone call, the two discussed possibly meeting up in June. Easton also made sexual innuendos regarding what he would like to do with Ashley.      In response to Ashley asking Easton what his favorite type of milkshake is, Easton's response can

**Affidavit of Aaron T. Eisner**                                                                                    **Page 5**

be summarized as "Vanilla, vanilla on your pretty little body...but we have to take a bath after or a shower." Later in the phone call, Easton can be summarized as stating, "I just want to give you a kiss right now."    Later, Ashley stated that she was bored, and Easton suggested a sexy conversation. Easton can be summarized as saying, "Think of like a dick in your mouth...ahh so funny...im excited though to give you like a nice head massage for that." Later in the conversation, Ashley says she is on walk and Easton's response can be summarized as saying, "You seeing like the tree I'm going to take you behind?" Ashley made encouraging noises at several points in the conversation.

15.    During the June 10, 2024, phone call, Easton used various nicknames when referring to Ashley, such as darling, pumpkin, and beautiful little baby girl. Regarding Easton coming to Oregon to meet Ashley, Easton can be summarized as stating, "I gotta see if I can make it work...find some business out there in Portland." Easton refers to Ashley as cutie patootie and states, in summary, "Can't wait to squeeze you... teddy bear hugs...yeahhh, get the goose bumps going on you...yeah you feel so good then, goose bumping in my arms." In my experience, these types of statements can be typical of grooming a child to be further involved in sexual activity. Easton later asks Ashley if she will give him a kiss. Ashley made encouraging noises at several points in the conversation.

**Easton discusses travelling to Oregon to visit fictitious 12-year-old**

16.    Easton further implied in the messages that he lives on the east coast. The OCE and Easton have discussed Easton travelling to Oregon to meet OCE's 12-year-old female persona. Below are portions of the Mobile Application A direct message conversation between the OCE and Easton relating to his plans to visit Oregon:

**Affidavit of Aaron T. Eisner**                                                                    **Page 6**

**OCE: Hehe u too!!! So when ya coming? Do U have a date??? I so excited**
**Easton: Wonderful prob later June 3rd week of**

**OCE: not Monday after the weekend bjt the next one**
**OCE: Grandma says she is planning to leave for las vegas on Monday and come**
**back either wenesday or thursday**
**Easton: Oh nice ok then maybe since couple weeks**
**Easton: Playing ball will be so fun if it's nice out**
**OCE: Ya!! So  fun. Is that the time u were thinking ur gonna come?[smile emoji]**
**OCE: Ok!! [kiss emoji, kiss emoji]**
**Easton: I don't k know gotts check if can still girl**

**Identification of Carl Eric Easton**

17.    Based on open-source research, Mobile Application A user "Charlie Magnolia"

was assessed to be Carl Eric Easton, with a Date of Birth of XX/XX/1976, and a residential

address in Arlington, Virginia, 22204. His phone number is 703-609-1849. A photograph of

Easton from Virginia Department of Motor Vehicles, below, is assessed to be the same

individual in the images sent in Mobile Application A, as seen in the image above:



18.    On or about May 19, 2024, and May 30, 2024, the OCE provided Easton with

OCE's cell phone number. On or about May 30, 2024, Easton called OCE's cell phone twice. As

stated above, the second time Easton called the phone was answered and an approximately 20-

**Affidavit of Aaron T. Eisner**                                                                 **Page 7**

minute phone conversation occurred between Easton and a police officer purporting to be OCE's 12-year-old female persona. The caller identification on OCE's phone displayed "No Caller ID" during both of Easton's calls to OCE's phone.

19.    Easton's cell phone number, 703-609-1849, is provided by Provider. In response to a subpoena, on or about June 3, 2024, Provider provided records connected to that phone number. The records stated that 703-609-1849 is subscribed to Carl E Easton, with a residential address in Arlington, Virginia, and IMSI **310260436086513**– the **Target Cell Phone**. Additionally, the subpoena returns state that the **Target Cell Phone** called OCE's cell phone twice on or about May 31, 2024, UTC, correlating to May 30, 2024, PST. The returns show that the prefix "*67" was entered prior to OCE's number being dialed by the **Target Cell Phone** on both occasions. On or about June 10, 2024, the affiant served a preservation letter to Provider requesting preservation of records relating to the Target Cell Phone.

20.    Based on the above facts, I believe that Easton is committing child exploitation offenses, and uses the **Target Cell Phone** in carrying out the Target Offenses. I believe that the location of the **Target Cell Phone** will assist in identifying places where child exploitation crimes are perpetrated, provide evidence regarding when and where Easton is committing child exploitation crimes, and provide insight relating to when and where Easton may commit child exploitation crimes.

**Use of Cellular Phones During the Commission of Crimes**

21.    Based upon my training, experience, and participation in this and other investigations involving child exploitation investigations, my conversations with other experienced investigators and law enforcement agents with whom I work, and interviews of

**Affidavit of Aaron T. Eisner**                                                                          **Page 8**

individuals who have been involved in child exploitation crimes, I have learned and know the following:

22.     Those engaged in criminal activity frequently use cellular phones to plan, coordinate, and to communicate before, during, and after crimes are committed. I also know that individuals engaged in criminal conduct commonly maintain records such as telephone numbers of their victims and messages that have been sent to and from the victims. It is common to find these records in cellular telephones.

23.     I also know that it is common for those engaged in criminal activity to frequently document the criminal exploits via text messages, photographs, videos, and other means on cellular devices, including on encrypted apps. Based on facts detailed above, I believe that Easton uses the **Target Cell Phone** to facilitate his child exploitation crimes, and the requested data and records, I believe, will yield evidence that will advance the Government's investigation into the Target Offenses.

### Records Held by Provider

24.     In my training and experience, I have learned that Provider is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data

from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

25.    Based on my training and experience, I know that Provider can collect E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on Provider's network or with such other reference points as may be reasonably available.

26.    Based on my training and experience, I know that Provider can collect cell-site and other location data about the **Target Cell Phone**, including the information requested in Attachment B. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

**Affidavit of Aaron T. Eisner**                                                                                    **Page 10**

27.     Based on my training and experience, I know that the Service Providers can collect cell-site data about the **Target Cell Phone**. I also know that wireless providers such as the Service Providers typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

28.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.  Currently, I believe that the **Target Cell Phone** has an IMSI of **310260436086513**.

29.     Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service.  I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the

wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cell Phone's** user or users and may assist in the identification of co-conspirators and/or victims.

### Conclusion

30.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c). I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

31.     I further request that the Court direct Provider to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Provider. I also request that the Court direct Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Provider's services, including by initiating a signal to determine the location of the **Target Cell Phone** on Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

32.     Prior to being submitted to the Court, this affidavit, the accompanying application, and the requested search warrant were all reviewed by Assistant United States Attorney Eliza Carmen Rodriguez. I was informed that it is AUSA Carmen Rodriguez's opinion that the affidavit and application are legally and factually sufficient to establish probable cause to

**Affidavit of Aaron T. Eisner**                                                                                      **Page 12**

support the issuance of the requested warrant and that the information likely to be obtained is relevant to an ongoing criminal investigation.

### Request for Precluding Notice

33.     It is respectfully requested, pursuant to 18 U.S.C. § 2705(b), that Provider be ordered not to disclose the existence or service of the search and seizure warrant to the subscriber, customer, or any other person, for a period of one year from the date of said order (unless that period is extended by further order of the Court), except as required to disclose to Provider's officers, employees, or agents to the extent necessary to comply with the warrant. Based upon my knowledge, training, and experience, it is my belief that notification at this time of the existence of the warrant will result in the destruction of or tampering with evidence and/or otherwise seriously jeopardize an investigation.

### Request for Delaying Notice

34.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Based upon my knowledge, training, and experience, it is my belief that providing immediate notice to subscriber or user of the Target Cell Phone may result in the destruction of or tampering with evidence and/or otherwise seriously jeopardize an investigation.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover,

to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

### Request for Sealing

35.    I further request that this Court issue an order sealing, until further order of the Court, all papers submitted in support of the requested search warrant, including the application, this affidavit, the attachments, and the requested search warrant.  I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may cause destruction of or tampering with evidence and/or otherwise seriously jeopardize an investigation.  Premature disclosure of the contents of the application, this affidavit, the attachments, and the requested search warrant may adversely affect the integrity of the investigation.

<u>*By phone pursuant to Fed. R. Crim. P. 4.1*</u>
**Aaron T. Eisner**
**Special Agent, FBI**

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 2:42 p.m. on June 14, 2024.

_____
HONORABLE STACIE F. BECKERMAN
United States Magistrate Judge

**Affidavit of Aaron T. Eisner**                                                                 **Page 14**